IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00418-MSK-KLM

BRIAN ANDERSON,

    Plaintiff,

v.

MIKE CUNNINGHAM,

    Defendant.

___

**OPINION AND ORDER DENYING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**
___

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion to Dismiss **(# 16)**, and the Plaintiff's response **(# 19)**; the Plaintiff's Motion to Stay Ruling on the Defendant's Motion **(# 38)** Until the Court Views AR 600-5; the Plaintiff's Motion for Summary Judgment **(# 55)**; and the Plaintiff's Motion to Amend **(# 64)** his Motion for Summary Judgment.

The Plaintiff is an inmate in the Colorado Department of Corrections ("CDOC"). According to his *pro se* Complaint **(# 3)**, the Plaintiff was charged with a disciplinary violation for attempting to steal paper towels from his work location. He contends that the Defendant invoked CDOC's Administrative Regulation 600-5 ("AR 600-5") to convict the Plaintiff of the disciplinary charges without providing the Plaintiff notice or a hearing. As a result of the conviction, the Plaintiff was confined to his housing unit and denied access to other prison facilities for a period of 45 days, was fined approximately $20-$50, and, apparently, terminated from his work

assignment. The Plaintiff contends that AR 600-5 deprived him of Due Process, and seeks monetary damages, expungement of the conviction from his record, a declaration that AR 600-5 is unconstitutional, and other relief.

The Defendant moves to dismiss **(# 6)** the Plaintiff's Complaint, arguing that the Plaintiff has failed to allege facts that would support the Due Process claim, because the Plaintiff fails to identify any protected liberty interest that was infringed by his conviction. Separately, the Plaintiff moves for summary judgment **(# 55)**, arguing that AR 600-5 is facially unconstitutional. Subsequent to filing his summary judgment motion, the Plaintiff moved to amend **(# 64)** that motion with additional supporting exhibits. The Court grants the motion to amend, and considers the summary judgment motion as supported by all of the documents submitted by the Plaintiff.

A *pro se* plaintiff is entitled to liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). In other words, if the Court if can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, *pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits., *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

The 14th Amendment to the United States Constitution provides that the State "shall not deprive any person of life, liberty, or property without due process of law." Thus, to state a claim for deprivation of Due Process, the Plaintiff must first allege facts indicating that he was deprived of a liberty or property interest that is protected by the Constitution. *Teigen v. Renfrow*, 511 F.3d 1072, 1078-79 (10th Cir. 2007). Only if such a protectible right is established does the Plaintiff enjoy a Constitutional entitlement to a particular level of process. *Id.* Although prison inmates still enjoy the protections of the Due Process clause notwithstanding their incarceration, *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974), they enjoy only a "narrow range of protected liberty interests." *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994). As the Supreme Court held in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), in the prison context, a liberty interest generally arises only where an inmate is subjected to a action that either "exceed[s] the sentence" that has

3

been imposed upon him, or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The Plaintiff's Complaint alleges that, as a result of his disciplinary conviction, he experienced confinement to his housing unit for 45 days, a corresponding loss of access to the gymnasium, law library, and religious services for that period of time, a fine of $20-$50, and, indirectly the loss of his prison work assignment. The Court understands the Plaintiff to allege that the loss of his work assignment led to a loss of either earned or earnable "good time" credits.

Turning first to the Plaintiff's confinement to his unit, and his ensuing loss of access to the gym, law library, and so on, the Court finds that the Plaintiff has failed to allege facts that would indicate that this restriction constitutes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." In *Sandin*, the Supreme Court found that an inmate's confinement to disciplinary segregation for a period of 30 days did create a liberty interest, because the rights and privileges lost by the inmate during that period of time were little different than the rights and privileges that would be lost by inmates in Administrative segregation or protective custody. 515 U.S. at 486. The Court ultimately concluded that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's action in placing [the inmate] there for 30 days did not work a major disruption in his environment." *Id.* Logically, if the type of disciplinary segregation described in *Sandin* is insufficient to create a liberty interest, the Plaintiff's complaint of being confined to his housing unit cannot either. The Plaintiff's Complaint describes no facts that would suggest that confinement to his housing unit was substantially more restrictive than the other types of confinement that are typically encountered in a prison environment. Accordingly, the Court finds that the Plaintiff fails to state

facts indicating that his disciplinary confinement, or the attendant loss of privileges, implicates a liberty interest sufficient to support a Due Process claim.

The Plaintiff also alleges that his disciplinary confinement had the effect of causing him to lose his work assignment, which, in turn, reduced his ability to earn "good time" credits. An inmate has no particular entitlement to a prison work assignment, and thus, loss of a prison job does not implicate a liberty interest. *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996). The loss of "good time" credits implicates a liberty interest only if the loss of those credits will "inevitably affect the duration of [the Plaintiff's] sentence." *Sandin*, 515 U.S. 472, 487 (1995). Under Colorado law, "good time" credits do not advance an inmate's release date, but merely advance the date upon which the inmate is considered for parole. *Fultz v. Embry*, 158 F.3d 1101, 1103 (10th Cir. 1998). Because an inmate's release on parole is discretionary with the parole board, a revocation of "good time" credits that postpones an inmate's parole eligibility date does not "inevitably" affect the length of the inmate's sentence. *Klein v. Coblentz*, 199 WL 767538 (10th Cir. Nov. 19, 1997) (unpublished).[1] Thus, the Plaintiff has no liberty interest in either the loss of "good time" credits, nor any interference with his ability to earn them. *Id.*

Although the Plaintiff has not pled facts sufficient to allege the deprivation of a liberty interest, the Plaintiff's Complaint is susceptible to a reading that would allow him to maintain a Due Process claim premised on his allegation that, among the punishments flowing from his disciplinary conviction, was a fine of $20-$50. There can be little dispute that, if the Plaintiff can

---

[1]Pursuant to 10th Cir. R. 32.1(a), the Court cites *Klein* for its persuasive value, which the 10th Circuit itself recognized in *Lusero v. Welt*, 223 Fed.Appx. 780, 784 (10th Cir. 2007) (unpublished) ("As we previously explained in an unpublished but persuasive opinion . . ."). Pursuant to 10th Cir. R. 32.1(b), a copy of *Klein* is attached hereto.

5

show that he was indeed fined a sum of money, he has identified a deprivation of a property right that could support a Due Process claim. There is some reason to view the Plaintiff's allegation that he was fined with some doubt, as the grievance forms and other exhibits attached to the Plaintiff's Complaint (as well as supporting documents submitted with the Plaintiff's Motion for Summary Judgment) make no mention of any fine, but as discussed above, for purposes of a Motion to Dismiss, the Court is required the treat the factual allegations in the Complaint as true.[2] Accordingly, the Defendant's Motion to Dismiss is denied insofar as the Plaintiff's Due Process claim may proceed, but only with regard to the Plaintiff's assertion that he was monetarily fined as a result of his disciplinary conviction.

For similar reasons, the Plaintiff's Motion for Summary Judgment is denied. Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). Where, as here, the movant – that is, the Plaintiff – has the burden of proof on a claim or defense at trial, the movant must establish <u>every</u> element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th

---

[2]Should the Plaintiff conclude that his allegation that he was fined is mistaken, his obligations under Fed. R. Civ. P. 11 will require him to dismiss this action.

Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

As discussed above, an essential element of the Plaintiff's Due Process claim is a showing that he was deprived of a property interest. The Court has carefully reviewed all of the documents submitted by the Plaintiff in support of his summary judgment motion, and finds nothing therein that refers to the Plaintiff allegedly being fined as a result of his disciplinary conviction. When moving for summary judgment, a party may not simply rest on the allegations in his pleadings, but must come forward with specific evidence establishing each element of his claim. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999). Because the Plaintiff has not come forward with evidence demonstrating that he was deprived of property, his motion for summary judgment is denied.

Accordingly, the Defendant's Motion to Dismiss **(# 16)** is **DENIED**, insofar as the Plaintiff has stated a Due Process claim only with regard to his allegation that he was deprived of a property interest in the form of a monetary fine as a result of his disciplinary conviction. The

Plaintiff's Motion to Amend **(# 64)** his summary judgment motion with certain supporting exhibits is **GRANTED**, but the Plaintiff's Motion for Summary Judgment **(# 55)**, even as amended, is **DENIED**.

Dated this 18th day of February, 2008

                                        **BY THE COURT:**

*/s/ Marcia S. Krieger*

                                        Marcia S. Krieger
                                        United States District Judge

Klein v. Coblentz
C.A.10 (Colo.),1997.

NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.
Bret S. KLEIN, Plaintiff-Appellant,
v.
Ken COBLENTZ, in his official and individual capacity; Robert Furlong, in his official and individual capacity; MIKE FERRIS, in his official and individual capacity; Officer Baumen, Correctional Officer, in his individual capacity; Marshal Blasingame, in his official and individual capacity; Tim Smelser, in his official and individual capacity; Lou Nordine, in his official and individual capacity; Endre Samu, Lt., in his official and individual capacity; Linda Tornowski, Lt., in her official and individual capacity; L. Vangelder, Lt., in his official and individual capacity; Dick Marr, in his official and individual capacity, Defendants-Appellees.
No. 96-1289.
D.C. No. 95-K-304.

Nov. 19, 1997.

Before BALDOCK, EBEL, and LUCERO, Circuit Judges.

ORDER AND JUDGMENT FN*

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

EBEL, Circuit Judge:

Plaintiff-appellant Bret Klein, an inmate of the Colorado Department of Corrections, appeals from the district court's order granting summary judgment to defendants on his claims brought pursuant to 42 U.S.C. § 1983. We affirm in part and reverse and remand in part.

The facts as alleged in Klein's pro se complaint and as construed in his favor are that he and another inmate at the Limon Correctional Facility, Donald Andrews, began having problems with defendant Coblentz, a prison guard, when Coblentz instituted personnel changes in the prison hobby shop where both Klein and Andrews were employees. When the problems could not be resolved, Klein urged Andrews to speak to Coblentz' supervisor, who reversed Coblentz' personnel decision. Klein then had another disagreement with Coblentz which, according to Klein, resulted in his cell being "ransacked" by two other defendants, also guards at the prison. About the same time, Coblentz claimed that he had received information that Klein was going to assault him with a knife. This claim was investigated by one of Coblentz' superiors and found to be meritless.

Approximately two weeks after the first search of his cell, Klein's cell was again searched. During the second search, one of the defendants approached one of the guards performing the search and whispered something to him. Klein was then ordered to leave the area of his cell while the search was proceeding. Immediately after this search, Klein was arrested, and two days later he was informed that a knife had been found in his cell. Klein denied any knowledge of the knife and asked that it be fingerprinted. He also requested that he be given a polygraph. Neither of these two requests were granted. Klein's inmate representative was not allowed to inspect the cell or to examine prison records to establish that Klein had not been the only inmate to occupy the cell.

After his arrest, Klein was brought up on prison disciplinary charges, found guilty, and sentenced to thirty days' punitive segregation and to the loss of forty-five days of good time credit. Klein further charged that as a "collateral consequence" of this incident, he was regressively classified to maximum security administrative segregation where he was held for 584 days, suffering resultant physical and mental distress. In a separate and later criminal action brought in Lincoln County District Court, Klein, represented by counsel and able to present evidence that other prisoners had occupied the cell and that the knife was never fingerprinted, was acquitted by a jury of possession of dangerous contraband.

Sometime after he had been punished by prison authorities for his alleged infraction, Klein learned that defendant Coblentz had been disciplined by the authorities at the Limon prison for planting a knife in the cell of another inmate. Coblentz was forced to resign and served ninety days in jail because of this infraction. As a result of this latter investigation, Klein was given a polygraph by an investigator from the Colorado Bureau of Investigation which, according to Klein, revealed that he had no prior knowledge of the knife found in the search of his cell.

Klein brought suit under 42 U.S.C. § 1983 alleging that his rights to due process and equal protection were violated when defendants planted a knife in his prison cell and then disciplined him for possessing dangerous contraband. He further alleged that defendants conspired to violate his rights and maliciously prosecuted him all in retaliation for the exercise of his rights under the First and Fourteenth Amendments. Specifically, Klein's pro se complaint stated that his "constitutional right to seek redress from a higher authority" had been infringed by defendants. R.

Doc. C at 4. Klein sought compensatory and punitive damages, and declaratory and injunctive relief.

The district court accepted the recommendation of the magistrate judge that summary judgment be entered for defendants.FN1 The magistrate judge had concluded that, assuming Klein had a protected liberty interest in remaining free from the punishment imposed, he received all the due process to which he was entitled. Specifically, the magistrate judge concluded that the prison officials were within their discretion to deny his inmate representative permission to inspect Klein's cell and to examine records of its previous occupancy, as well as to deny Klein's request that the knife be fingerprinted and that he be administered a polygraph exam. Applying the holding in Superintendent v. Hill, 472 U.S. 445, 455-56 (1985), the magistrate judge concluded that "some" evidence supported the disciplinary board's findings, thus insulating it from reversal. Klein's retaliation claim was dismissed because the magistrate judge found it insufficiently specific to show retaliatory purpose. The claim that Klein was denied equal protection of the law when the prison authorities refused to allow his inmate representative to examine his cell and to review prison records was held to be meritless. Finally, the magistrate held that Klein's request for an injunction requiring the restoration of his good time credits was more properly pursued via a petition for writ of habeas corpus, and that there was no indication that Klein had exhausted his state court remedies. On appeal, Klein challenges these conclusions. He further argues that the filing fee obligations imposed on prisoners under 28 U.S.C. § 1915(b), as amended by the Prisoner Litigation Reform Act of 1995 ("PLRA" or "the Act"), Pub.L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996), under which Klein was required to pay this court's filing fee, is unconstitutional.

FN1. Klein concedes that defendant Baumen was properly dismissed from this suit.

Because Klein is representing himself, his complaint will be liberally construed. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). In our de novo review of the district court's grant of summary judgment, we apply the same standard as that used by the district court and examine the record to determine whether there was any genuine dispute as to material facts and whether the prevailing party was entitled to the judgment as a matter of law. See Smith v. Maschner, 899 F.2d 940, 942-43 (10th Cir.1990). Viewing the evidence in the light most favorable to Klein, we must determine whether reasonable jurors could find, by a preponderance of the evidence, that defendants were entitled to a verdict. See id. at 943.

**Claims based on imposition of disciplinary segregation**

Klein contends that he is entitled to damages for the imposition of disciplinary segregation and the resulting physical and mental anguish he suffered. We disagree. The Supreme Court has recently redefined the scope of prisoner due process claims and clarified the proper approach for their analysis. See Sandin v. Conner, 515 U.S. 472 (1995). The decision in Sandin applies retroactively. See Talley v. Hesse, 91 F.3d 1411, 1413 (10th Cir.1996).

In Sandin, the prisoner alleged that he had been deprived of a state-created liberty interest protected by the due process clause when he was sentenced to thirty days disciplinary segregation for misconduct following a hearing at which he was not allowed to call witnesses. In rejecting the plaintiff's claim, the Court noted that, although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," those interests, however, "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84 (citations omitted). The Court concluded that thirty days in disciplinary confinement did not "present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 486. Because Klein's sentence of thirty days in disciplinary segregation is the same as that of the plaintiff in Sandin, it is clear that Klein's disciplinary segregation similarly fails to encroach upon a due process liberty interest. Klein's subsequent placement in administrative segregation similarly fails to raise due process issues. See Talley, 91 F.3d at 1413 (rejecting procedural due process claim because, under Sandin, administrative detention is not the sort of "atypical, significant deprivation" that gives rise to a right to due process); see also Luken v. Scott, 71 F.3d 192, 193 (5th Cir.1995), cert. denied, 116 S.Ct. 1690 (1996) (same).

In addition to analyzing the typicality of the punishment imposed, the Court in Sandin also considered whether the action of the prison authorities in disciplining the plaintiff would "inevitably affect the duration of [the plaintiff's] sentence." Id. at 487. Because "[t]he decision to release a prisoner rests on a myriad of considerations," the Court concluded that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." Id. Klein has similarly failed to show that his placement in either disciplinary or administrative segregation will inevitably affect the duration of his sentence and thus cannot invoke due process protections.

Accordingly, because Klein has not demonstrated that the punishment "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life,"id. at 484, or that his sentence will be inevitably lengthened, see id. at 487, his punishment raises no procedural due process issues.

**Loss of Good Time Credits**

As discussed above, under Sandin Klein will be accorded relief for the deprivation of his good time credits only if he can demonstrate that "the State's action will inevitably affect the duration of his sentence." Sandin, 515 U.S. at 487. Generally, a loss of good time credits will not "inevitably affect the duration of [a prisoner's] sentence." Id.

Klein has no constitutional or inherent right to be released before his valid sentence expires. See Greenholz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Nor does he dispute defendants' assertion that the grant of parole as to him is discretionary. Cf. Thiret v.

Kautzky, 792 P.2d 801, 805 (Colo.1990) (explaining Colorado parole scheme and observing that only those inmates serving sentences for crimes committed on or after July 1, 1979 but before July 1, 1985 are entitled to mandatory parole). Further, Klein does not allege that he fits under a sentence category whereby his good time credits would qualify him for automatic parole eligibility under Colo.Rev.Stat. § 17-22.5-303(6).FN2

FN2. We are unable to determine from the record when Klein's offense(s) were committed or the nature or class of offense(s) involved. We are only told in his response brief to defendants' motion for summary judgment that Klein is serving a forty-year-to-life sentence.

A Colorado inmate has no constitutional right to good time credit, see Kodama v. Johnson, 786 P.2d 417, 419 (Colo.1990) (en banc), even though "the accumulation of good time credits serves ... the purpose of determining an inmate's parole eligibility date,"People v. Swepston, 822 P.2d 510, 512 (Colo.Ct.App.1991). Good time credits do not count toward sentence reduction. See id. Thus, Klein's loss of good time credits has not "inevitably" increased the duration of his sentence, and accordingly does not give rise to a right to due process.


Claims Based on Procedures Employed in Prison Disciplinary Hearing

To the extent Klein asserts that his constitutional rights have been denied because the prison disciplinary procedures used in his case were defective, his claims are barred by the Supreme Court's recent decision in Edwards v. Balisok, 117 S.Ct. 1584 (1997). There, the Court determined that a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits is not cognizable under § 1983 unless the claimant can demonstrate that the underlying conviction or sentence has been invalidated. Id. at 1589.

Balisok, as does Klein, alleged that his prison disciplinary conviction was the result of a biased decision maker. Because Balisok's claim for declaratory relief and monetary damages, based as it was on the alleged bias of the decision maker, would have necessarily implied the invalidity of the punishment imposed, the claim could not be maintained under § 1983.

Klein is in the same position as Balisok. Klein's disciplinary determination has not been reversed, and he has apparently not pursued a state habeas action to obtain a judgment that the prison ruling was invalid. Klein's claim, therefore, is similarly noncognizable under § 1983. His claim that he was framed by prison authorities is indistinguishable from Balisok's and would necessarily imply the invalidity of the punishment imposed. We therefore affirm the district court's dismissal of Klein's due process and equal protection claims based on both the imposition of the particular punishment and any alleged defect in the prison disciplinary proceeding.FN3

FN3. As noted supra, in granting summary judgment to defendants on Klein's due process claim, the district court relied on Hill, 472 U.S. at 455-56, for the proposition that, because the findings

of the prison disciplinary board were supported by "some evidence," those findings could be upheld. The "some evidence" relied on by defendants and the district court were the pictures of Klein's cell and of the knife, and the incident report submitted by Smelser. Because this was indeed "some evidence," the district court concluded that Klein's claim failed. The court's reasoning under the circumstances of this case is unpersuasive.

In cases involving evidence allegedly planted in order to facilitate a false disciplinary charge, the Hill standard has not been satisfied if the only evidence supporting the prison disciplinary board's decision is the planted evidence. Although the "some evidence" standard is meager, "it still must point to the accused's guilt." Lenea v. Lane, 882 F.2d 1171, 1175 (7th Cir.1989).

**Malicious Prosecution Claim**

In addition to claims flowing from his prison disciplinary proceeding, Klein also asserts that he was the victim of malicious prosecution when he was made to stand trial in state court on the charge of possession of dangerous contraband, a class four felony. As mentioned above, Klein was acquitted by a jury of that charge. We do not read Balisok as erecting an impediment to this claim. Klein's success on a malicious prosecution claim based on the action in state court would not imply the invalidity of a conviction or sentence. There is no conviction and resulting sentence from the state court action to invalidate because Klein was acquitted. The state court action was separate from the prison disciplinary proceeding, carried on under different procedural rules and with different decision-makers. Balisok, therefore, does not apply to Klein's malicious prosecution claim.

In order to maintain this claim under § 1983, Klein must allege facts tending to prove the common law elements of malicious prosecution and that his Fourth Amendment right to be free from unreasonable seizure has been violated. See Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir.), cert. denied, 117 S.Ct. 186 (1996). In Colorado

a plaintiff must prove by a preponderance of the evidence that the defendant was a party to or assisted in a criminal or civil proceeding against the plaintiff, that the proceeding was resolved in favor of plaintiff, that there was no probable cause for the proceeding, that the defendant was actuated by malice in instituting the proceedings, and that the plaintiff was damaged thereby.

Walford v. Blinder, Robinson & Co., 793 P.2d 620, 623 (Colo.Ct.App.1990).

We find the facts alleged by Klein sufficient to overcome defendants' motion for summary judgment on his claim of malicious prosecution. Defendants were parties to or assisted in the criminal proceedings against Klein which were resolved in his favor. Klein's allegation that the knife was planted in his cell in retaliation for his advocacy on behalf of another inmate sufficiently alleges the absence of probable cause for his prosecution.

In addition to the facts alleged in Klein's complaint and discussed above, the record contains affidavits from Klein's friend, Andrews, and from Gregory Wells, Klein's inmate representative. Both affidavits state that there had been no problems in the hobby shop until Coblentz took over.

Andrews stated that Coblentz threatened "to get you and [to] get your buddy Klein too." R. Doc. 13, Att. B. Wells stated that the staff in Klein's particular cell block was ordered not to talk to him. Id. at Att. C. This evidence, when coupled with Klein's other allegations, is sufficient to raise a factual issue regarding defendants' malice and are similarly "sufficient to support an inference by a fair-minded jury that defendants took disciplinary action against him based at least in part on improper motives." See Smith, 899 F.2d at 949. Most importantly, on the record before us, defendants do not controvert Klein's allegation that the knife was planted in his cell, relying instead solely on the Sandin penalty-based analysis to sustain their case. This approach ignores Klein's claim that he was maliciously prosecuted by defendants in retaliation for the exercise of his constitutional rights. By itself, Klein's uncontroverted claim that defendants planted the knife in his cell and then used that as a basis for prosecuting him should have prevented the grant of summary judgment for defendants. See Penrod v. Zavaras, 94 F.3d 1399, 1405 (10th Cir.1996) (holding that uncontroverted allegations of retaliation were sufficient to raise a genuine issue of material fact).

Thus, with respect to Klein's claims based on a malicious prosecution theory arising from his criminal prosecution in state court, we find that Klein has raised genuine issues of material fact regarding that claim to survive defendants' motion for summary judgment. The judgment of the district court on Klein's malicious prosecution claim is reversed, and this claim is remanded for further proceedings.

In his complaint, Klein also requested an injunction ordering the authorities to restore his good time credits; the district court correctly held that this claim was more properly pursued via a petition for writ of habeas corpus. See Smith, 899 F.2d at 951. The claim for injunctive relief was thus dismissed under the authority of Rose v. Lundy, 455 U.S. 509, 522 (1982), because there was no indication in the record that state remedies had been exhausted. Upon remand, the district court, in its discretion, may wish to allow Klein to amend his complaint to allege exhaustion if possible. If Klein is able to demonstrate that he has exhausted his state court remedies, the case may proceed in the district court with this portion of it construed as a 28 U.S.C. § 2254 petition. If, however, Klein has not exhausted his state remedies, the district court should dismiss the habeas portion of Klein's complaint without prejudice. Because there is no exhaustion requirement under § 1983, see Balisok, 117 S.Ct. at 1589, Klein's malicious prosecution claim should go forward.FN4

FN4. Defendants argue in their brief that Klein has failed to allege the personal participation of defendants Furlong and Tornowski. We agree. The only involvement alleged against Furlong and Tornowski pertains to the prison disciplinary proceedings which we have already held were properly dismissed. There is no allegation adequately tying Furlong and Tornowski to the malicious prosecution. Thus, we affirm the dismissal of Klein's claims against defendants Furlong and Tornowski.

In their brief, defendants argue that they should be accorded Eleventh Amendment immunity from suit. This is incorrect because Klein sued defendants in their individual as well as their official

capacities, thus avoiding an Eleventh Amendment problem. See Pride v. Does, 997 F.2d 712, 715 (10th Cir.1993).

Although the district court did not rule on defendants' qualified immunity defense, no such immunity would be appropriate because the law was clearly established that defendants could not interfere with Klein's right to free speech or retaliate against him for exercising it by subjecting him to a malicious prosecution. See Penrod, 94 F.3d at 1405.

Finally, Klein argues that the Prison Litigation Reform Act (PLRA) is unconstitutional. This court has recently considered a similar challenge to PLRA and has agreed with the uniform conclusion of other courts that, even under a variety of theories, the Act passes constitutional muster. See Shabazz v. Parsons, No. 97-6025, 1997 WL 650958, at *2 (10th Cir. Oct. 21, 1997) (citing Mitchell v. Farcass, 112 F.3d 1483, 1487-89 (11th Cir.1997); Roller v. Gunn, 107 F.3d 227, 231-34 (4th Cir.), cert. denied, 118 S.Ct. 192 (1997); Hampton v. Hobbs, 106 F.3d 1281, 1283-88 (6th Cir.1997)). Klein first contends that the Act denies prisoners equal protection because it impermissibly distinguishes between indigent inmates and indigent people in general. The Eleventh Circuit has recently rejected such an argument, concluding that in enacting PLRA "Congress had ample justification (e.g., prisoners often have an abundance of free time, live in a nearly cost-free environment, and have unique incentives to file meritless or frivolous lawsuits) in differentiating between indigent prisoners and other litigants." Mitchell, 112 F.3d at 1489; see also Hampton, 106 F.3d at 1286 (rejecting an equal protection challenge because "neither prisoners nor indigents are a suspect class and ... the classification does not implicate a fundamental right"). The Act does not intrude on the constitutional separation of powers. See Plyler v. Moore, 100 F.3d 365, 372 (4th Cir.1996), cert. denied, 117 S.Ct. 2460 (1997). Nor does it impair due process rights. See Hampton, 106 F.3d at 1287-88. Finally, because nothing in PLRA punishes inmates for past activity, the Act does not trespass on citizens' right to be free from bills of attainder, under which specifically designated persons or groups are singled out for punishment without trial. See Selective Serv. Sys. v. Minnesota Pub. Interest Research Group, 468 U.S. 841, 847 (1984). Klein's contention that it is inconsistent to require an indigent litigant to pay a filing fee and then to dismiss the complaint as frivolous is without merit because the Act amends § 1915 and now explicitly authorizes such procedure. See 28 U.S.C. § 1915(e)(2).

The judgment of the United States District Court for the District of Colorado is AFFIRMED in part and REVERSED in part, and this case is REMANDED for further proceedings in accordance with this order and judgment.

C.A.10 (Colo.),1997.
Klein v. Coblentz
132 F.3d 42, 1997 WL 767538 (C.A.10 (Colo.)), 97 CJ C.A.R. 2927

END OF DOCUMENT