IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00418-MSK-KLM

BRIAN ANDERSON,

        Plaintiff,

v.

MIKE CUNNINGHAM,

        Defendant.

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(# 84)**, and the Plaintiff's oral statements at the Pretrial Conference on April 8, 2008, stating his position with regard to the factual issues therein; the Plaintiff's Motion to Strike **(# 85)** the affidavit supporting the Defendant's summary judgment motion; the Plaintiff's "Motion for Ethics Violations" against the Defendant's counsel **(# 86)**; the Plaintiff's "Motion for the Issue of Perjury" **(# 87)**; and the Plaintiff's Motion to Dismiss Remaining Claims[1] **(# 91)**.[2]

---

[1]The Plaintiff's Motion to Dismiss states that, once the Court has ruled on the Plaintiff's motions at Docket # 85-87, the Plaintiff withdraws his remaining substantive claim. It is not clear whether the Plaintiff's withdrawal is conditioned upon the Court granting those motions, and for the reasons stated herein, the Court denies them. Accordingly, the Court will reach the merits of the Plaintiff's remaining claim, notwithstanding his Motion to Dismiss.

[2]Also shown as pending on the Court's docket is a prior Motion for Summary Judgment **(# 73)**. The Court is of the opinion that leave to file that motion was effectively denied by the Court's April 8, 2008 Order **(# 74)** denying the Defendant's Motion for Extension of Time to File Dispositive Motions **(# 69)**. Because leave to file the instant summary judgment motion was thereafter expressly granted **(# 90)**, the Court considers only the current summary judgment

1

## FACTS

This case arises in a somewhat convoluted factual posture, requiring some explanation. The Plaintiff is an inmate in the Colorado Department of Corrections ("CDOC"). According to his *pro se* Complaint **(# 3)**, he was charged with a disciplinary violation for attempting to steal paper towels from his work location. He contends that the Defendant invoked CDOC's Administrative Regulation 600-5 ("AR 600-5") to convict him of the disciplinary charges without providing him notice or a hearing. As a result of the conviction, the Plaintiff was confined to his housing unit and denied various privileges for a period of 45 days, was fined approximately $20-$50, and, terminated from his work assignment. The Plaintiff contends that AR 600-5 deprived him of Due Process, and seeks monetary damages, expungement of the conviction from his record, a declaration that AR 600-5 is unconstitutional, and other relief.

By Order **(# 65)** dated February 18, 2008, the Court dismissed most of the Plaintiff's claims, finding that he had no property interest in his job or in prison privileges sufficient to support a Due Process claim. However, Court found that the Plaintiff's allegation that he was fined $20-$50 as a result of the violation was not controverted by the Defendant's evidence, and that such a fine could constitute a deprivation of property sufficient to support a Due Process claim. Thus, the Court allowed the Plaintiff's Due Process claim to proceed solely with regard to the contention that he was fined.

The situation became clearer when the parties appeared before the Court for a Pretrial Conference on April 8, 2008. Having considered the Plaintiff's explanation of his claims and the various documents he has submitted over the course of this case, the Court ascertains the

---

motion.

following factual situation.

On April 12, 2006, as the Plaintiff left his work assignment at the prison's Seating Factory, a search of his person revealed that he was in possession of paper towels. It is undisputed that the removal of such material from the shop was a violation of prison rules.[3] Specifically, the prison rules state that "If anything from the Seating Factory is found on your person . . . no matter what it is, you will be terminated and may also result in a [prison disciplinary] violation." Although no formal disciplinary charges were filed against the Plaintiff, on or about April 14, 2006, Defendant Cunningham terminated the Plaintiff from his work assignment at the Seating Factory.

The Plaintiff's termination had two major effects. In general, inmates working in the Seating Factory are entitled to an end-of-the-month bonus tied to the shop's productivity. However, under the terms of Section IV(B)(1)(b)(3) of CDOC's Administrative Regulation ("AR") 850-3A, the regulation governing Inmate Pay, "[i]f an inmate is fired for any reason . . . he or she will not receive incentive bonus pay for the final month worked." Thus, because the Plaintiff was terminated on April 14, 2006, he did not receive a bonus for the month of April. As the Plaintiff explained during the Pretrial Conference, it was the loss of this anticipated bonus that he refers to as the "fine" that was imposed upon him.

---

[3] The Plaintiff's first stage grievance relates a different version of events. According to Docket # 56, the Plaintiff appears to contend that he was subject to a routine strip search upon leaving the shop, after which he washed and dried his hands. After drying his hands, he admittedly put some paper towels in his pocket, although he states that this was done, apparently without objection, in the presence of a guard. Thereafter, the guard thereafter confronted the Plaintiff about a sheet of paper the Plaintiff had with some website addresses on it. The Plaintiff explained that the paper was permitted legal material, and the incident appears to have passed. Two days later, the Plaintiff was told that he was being fired from his job for having taken the paper towels.

The second effect of the Plaintiff's termination arises under AR 600-5. That regulation's purpose is "to establish procedures for withholding privileges [such as television, canteen access, possession of appliances, and single cell occupancy] from offenders who refuse to participate in required . . . work programs." AR 600-5, § II.[4] The regulation provides that "[a] restricted privileges status review shall be initiated for any DOC offender who . . . is terminated from a DOC sanctioned work or treatment program." *Id.*, § IV(A). That status review is triggered by an Incident Report from the staff of the work assignment. The inmate's Case Manager reviews the Incident Report, and makes an initial determination of whether the inmate "meets the criteria for placement on restrictive privileges status." *Id.*, § IV(A)(2). If the Case Manager determines that restricted privileges are warranted, he forwards that finding to a "facility classification committee" for a "facility classification review." *Id.*, § IV(A)(2)(a). If the classification committee approves the restriction, the inmate loses the identified privileges for a period of at least 60 days, subject to an appeal right to the Warden. *Id.*, § IV(B).

In this case, officer Greg Carwin completed an Incident Report on April 14, 2006, stating that the Plaintiff was "caught attempting to take paper towels out of building." *Docket* # 85 at 7. On April 19, 2006, the Plaintiff's Case Manager, Brian Holman, filed a document entitled "Initial Request for Population Management Pod Status," which this Court understands to be an

---

[4]Curiously, although AR 600-5 is cited prominently in the Plaintiff's Complaint and forms the backbone of the events giving rise to the claims, neither party has seen fit to supply the Court with a copy of the regulation. The Court takes judicial notice of CDOC's webpage, http://www.doc.state.co.us/index.html, which links to the text of current Administrative Regulations, including AR 600-5. Admittedly, the version of AR 600-5 available on that page became effective on October 1, 2007, after the events at issue here. However, neither party has contended that the relevant portions of the regulation have changed since April 2006, and thus, the Court considers the regulation as it currently exists.

4

initial finding by Mr. Holman that the Plaintiff should be subjected to restricted privileges status under AR 600-5. *Docket #* 85 at 8. Mr. Holman indicated that the finding was based on the Plaintiff being "Job related unassigned," and listed the Incident Report number, noting that the Plaintiff had been "terminated from [correctional industries]."

The form indicates that Mr. Holman discussed it with the Plaintiff on that same date, but that the Plaintiff refused to sign. This is likely the point at which a conversation occurred of which Mr. Holman and the Plaintiff have different understandings. According to Mr. Holman's affidavit in support of the instant motion, he states that he told the Plaintiff that "if he only took a couple of paper towels and placed them in his pocket . . . in my opinion, it would be unlikely that any discipline or classification actions would be taken against him."[5] Mr. Holman denies "finding [the Plaintiff] not guilty" of any offense or finding that the Plaintiff's termination from the Seating Factory was without just cause. Mr. Holman states that it is not within his authority to make such findings. The Plaintiff contends that Mr. Holman "determined the Plaintiff was innocent and took Plaintiff of [restricted privileges status]." *Docket #* 56 at 7. (The Plaintiff also

---

[5]It is somewhat difficult to square Mr. Holman's statement to the Plaintiff that he would be "surprised" if "classification actions" would be taken against the Plaintiff when it appears that it was Mr. Holman himself who recommended such an action in the Request for Population Management Pod Status.

The confusion experienced by the Court on this point is emblematic of the failure of the Defendant's counsel in this case to diligently prepare this matter and to supply the Court with a complete, comprehensible record. Admittedly, the burden is typically on the plaintiff to come forward with evidence that establishes his claims, but particularly in cases involving *pro se* prisoners, the Court depends upon counsel for CDOC to supply sufficient exhibits and affidavits to fully explain the relevant circumstances. The skeletal briefs and affidavits submitted by the Defendant here do not do so. The Court is particularly troubled that this lack of preparation and completeness occurs after the Defendant's counsel acknowledged, at what was intended to be the Final Pretrial Conference, that he had not yet met with Mr. Holman, the Plaintiff's Case Manager and one of the key witnesses in the case.

refers to Mr. Holman as rendering an "appellate ruling." *Id.* at 8.)

On April 22, 2006, a Mr. Jimerson, chairperson of what the Court assumes is the facility classification committee, denied Mr. Holman's recommendation that the Plaintiff be placed on restricted privileges status. Mr. Jimerson apparently found that the "documents [concerning the event] do not support [restricted privileges] status." Thus, it appears that, to the extent that the Plaintiff was subjected to restricted privileges during this period of time, that restriction would have lifted on or about April 22, 2006.[6]

Armed with what he believes was an acquittal, the Plaintiff apparently spoke to Defendant Cunningham and requested restoration to his work assignment and payment of the April end-of-the-month bonus. Mr. Cunningham refused, and this litigation followed.

## ANALYSIS

### A. Standard of review

The Court is mindful that a *pro se* plaintiff is entitled to liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). In other words, if the Court if can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, *pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in

---

[6] The Plaintiff appears to contend that he was on restricted privileges for nearly "two months." At best, the record appears to reflect that he experienced a loss of privileges of no more than 10 days, from April 12 to April 22, 2006.

these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

Where, as here, the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be

7

dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Property interest in "fine"**

The Court previously dismissed any Due Process claims premised on the Plaintiff's confinement to his housing unit, loss of privileges, loss of good time, and termination from his work assignment. For the reasons stated previously and deemed incorporated herein, the Court found that inmates do not possess a protectible liberty or property interest in any of these things, and thus, a claim by the Plaintiff that he was denied these things without notice of charges and an opportunity to be heard does not constitute a violation of Due Process. *See generally Teigen v. Renfrow*, 511 F.3d 1072, 1078-79 (10th Cir. 2007) (essential element of Due Process claim is that plaintiff was deprived of a liberty or property interest); *Nichols v. Board of County Commissioners*, 506 F.3d 962, 969 (10th Cir. 2007) (to show a property interest in a particular thing, a person must have a legitimate claim of entitlement to it, not just a mere desire for or expectation of obtaining it).

The Court allowed the Plaintiff to proceed on his claim that he was "fined" as much as $50. The common understanding of the term "fine" is that an individual has been required to relinquish money that belongs to him as a result of a violation of a law or rule. In such circumstances, the fine divests the person of property – *i.e.* money – that belongs to them, and thus, constitutes a property deprivation sufficient to support a Due Process claim. However, the facts presented here show that, regardless of how anyone may have characterized it, the Plaintiff was not "fined"; that is, nobody took money away from him that he had already received. Rather, the evidence shows that the Plaintiff likely <u>would</u> have received a bonus at the end of

April 2006, had he remained employed at the Seating Factory. But as prison rules make clear, termination from employment, regardless of the reasons therefor, result in an inmate forfeiting the right to any bonus that month. It is undisputed that the Plaintiff was terminated from the Seating Factory, and thus, he had no entitlement to receive the bonus. Because he was not entitled to receive a bonus, he was not deprived of a property interest and cannot establish a Due Process claim based on the bonus.

Accordingly, because the Court has found that the Plaintiff has identified no property interest that would support a Procedural Due Process claim, the Defendant is entitled to summary judgment on that claim.

### C. Substantive Due Process

In deference to the Plaintiff's *pro se* status, the Court has carefully reviewed the Plaintiff's oral and written submissions to determine whether he describes any other facts that could give rise to a cognizable claim. At the Pretrial Conference, the Plaintiff explained that he was upset that although Mr. Holman and Officer Jimerson "found him not guilty" of stealing the paper towels, Defendant Cunningham refused to "go along with the decision" and reinstate him at the Seating Factory. Arguably, this could be construed as an attempt to raise a distinct Due Process claim – namely, that Defendant Cunningham's failure to honor the "acquittal" of the Plaintiff was arbitrary and capricious – that is, a violation of the Plaintiff's Substantive Due Process rights.

A Substantive Due Process claim arises when the state deprives a person of a property interest for an arbitrary reason. *Nichols*, 506 F.3d at 969. Once again, an essential predicate of the claim is that a person had a property interest – that is, a legitimate claim of entitlement to it.

9

*Id.* at 969-70, *quoting Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). If a property interest exists, a person asserting a Substantive Due Process claim must then show that he was deprived of that property interest, and that the denial was the result of an official decision that is arbitrary, irrational, or shocking to the conscience. *Darr v. Town of Teluride*, 495 F.3d 1243, 1257 (10th Cir. 2007).

Whether the Plaintiff had a protectible property interest in his job at the Seating Factory is one that presents some interesting questions on the instant record. On the one hand, as the Court previously noted, there is authority for the proposition that prison inmates have no specific property or liberty interest in obtaining or retaining a particular prison job or a job at all. *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996); *James v. Quinlan*, 866 F.3d 627, 629-30 (3d Cir. 1989). On the other hand, cases like *James* appear to recognize at least the possibility that prison regulations can create a liberty interest, entitling an inmate to a particular job in certain circumstances. 866 F.3d at 630 ("we think that a federal prison regulation might give a prisoner a liberty interest in his or her employment as against contravening acts by prison officials"). Here, Section IV(6) of AR 850-3A provides that "Inmates may be fired, dismissed or demoted for just cause . . . ." Language which limits an employer's ability to terminate employees except for "just cause" have been found to create a property interest in the employee. *See e.g. Kingsford v. Salt Lake City School Dist.*, 247 F.3d 1123, 1129 (10th Cir. 2001).

However, this Court finds that AR 850-3A, although it provides that inmates may be terminated from work assignments for "just cause," does not purport to limit the employer's ability to terminate to only situations involving just cause. *Compare Kingsford*, 247 F.3d at 1129 ("The Written Agreement between the SLCSD and the Salt Lake Teachers Association

states that teachers may be dismissed <u>only</u> for just cause") (quotation marks omitted, emphasis added). Here, without evidence that AR 850-3A was intended to limit the Defendant's ability to terminate inmates to <u>only</u> those situations involving just cause, the Plaintiff cannot establish that he had a property interest in his continued employment in the Seating Factory, and thus, cannot maintain a Substantive Due Process claim.

Moreover, even assuming that the Plaintiff <u>did</u> have a property interest in continued employment at the Seating Factory, the Court finds that the undisputed evidence is insufficient to show that Defendant Cunningham's decision to terminate and refusal to rehire him was "arbitrary, irrational, or shocking to the conscience." Although the Plaintiff may dispute the circumstances of the events, *see generally Docket* # 56, the record is unrebutted that he was found in possession of paper towels when attempting to leave the shop area. It is also undisputed that removing the paper towels would violate prison rules. Thus, the Court cannot find that Mr. Cunningham's decision to terminate the Plaintiff's employment for violation of that rule was arbitrary or capricious. The mere fact that Mr. Cunningham chose to resolve a credibility dispute between the Plaintiff and the officer searching him over the circumstances of the search in favor of the officer's version of events is insufficient to show that Mr. Cunningham's decision was so arbitrary as to violate Due Process. *See e.g. Fowler v. Smith*, 68 F.3d 124, 128 (5th Cir. 1995) ("the appropriate inquiry is not whether Fowler engaged in the misconduct at issue, but whether the [the defendants] had sufficient reason to believe that he engaged in misconduct so that [their] action was not wholly arbitrary or irrational").

Moreover, the Plaintiff reads too much into the decision by Officer Jimerson and/or Mr. Holman not to impose a restriction on privileges. There is no apparent connection between the

considerations that underlie AR 600-5 with regard to whether an inmate's privileges should be restricted and the considerations entertained by Mr. Cunningham in deciding whether the Plaintiff violated shop rules.  Nothing in the record suggests that, in deciding not to impose a privilege restriction on the Plaintiff, Mr. Holman or Officer Jimerson was also passing on the question of whether the Plaintiff should have been terminated in the first instance, much less that they had the authority to do so.  The record does not reflect that Mr. Holman and Officer Jimerson found that the Plaintiff had <u>not</u> taken the paper towels; at best, they merely found that the offense, even if proven, was not significant enough to warrant a 60-day restriction of the Plaintiff's privileges.  Thus, the mere fact that Mr. Holman and Officer Jimerson decided not to impose a privilege restriction under AR 600-5 does not demonstrate that Defendant Cunningham's refusal to rehire the Plaintiff was arbitrary or capricious.

Accordingly, even if the Court construed the Plaintiff's oral presentation at the Pretrial Conference to be asserting a Substantive Due Process claim, such a claim would fail.

The Court has considered whether any other claims could be asserted by the Plaintiff under this set of circumstances, and finds none.  Accordingly, the Defendant is entitled to summary judgment on all claims in this case.

### B.  Plaintiff's motions

The Plaintiff has responded to the Defendant's recent tender of Mr. Holman's affidavit with a barrage of motions accusing the Defendant and his counsel of perjury and unethical behavior.  The Court has reviewed all of the Plaintiff's motions and supporting information, and finds the contentions therein to be without merit.

The Plaintiff's accusations appear to spring from three misconceptions.  First, as

discussed above, the Plaintiff confuses Mr. Holman's "finding" (a finding actually made by Mr. Jimerson) that the Plaintiff should not be placed on restricted privilege status with a finding that the Plaintiff should not have been terminated from his job. As is obvious from the procedures under AR 600-5, the question of whether an inmate has been terminated from a job and whether he should be restricted in his privileges are distinct questions. The procedures authorize the Case Manager and facility review committee to independently review the circumstances and determine whether the termination – regardless of whether it was proper or not – warrant a restriction on privileges. The fact that they decided against imposing a privilege restriction could reflect a disagreement as to whether termination was proper, or a conclusion that the termination was justified but the offense so inconsequential that privilege restrictions were unwarranted. Ultimately, the issue is irrelevant – the Plaintiff has not shown that Mr. Holman or Mr. Jimerson had the authority to directly review and overrule Defendant Cunningham's decision to terminate the Plaintiff, and thus, their decisions with regard to privilege restrictions cannot bind Defendant Cunningham.

Second, and somewhat relatedly, the Plaintiff challenges Mr. Holman's statement in his affidavit that a decision as to whether the Plaintiff was terminated for cause "is not within the scope of my responsibilities." As mentioned previously, the Plaintiff mistakenly equates Mr. Holman's ability to determine whether the Plaintiff should receive privilege restrictions under AR 600-5 with Mr. Cunningham's ability to decide whether to employ the Plaintiff in the Seating Factory. There is no reason to assume that Mr. Holman's duty to oversee issues of inmate "classification" necessarily entitles him to dictate whether the Plaintiff should be restored

to his job at the Seating Factory. Thus, there is nothing in the record to suggest that Mr. Holman's statement that he has no authority over the Plaintiff's job assignment is false.

Third, the Plaintiff appears to believe that Mr. Holman's affidavit is somehow inconsistent with a response by the Defendant to the Plaintiff's document production request. That request sought "Appellate document that Case Manager Holman utilized to render a verdict in favor of the Plaintiff." The Defendant responded that he "is not aware of any document which meets the description of the document requested," but supplied the Incident Report and certain other documents. The Court finds that the Defendant's response is not misleading. Mr. Holman's affidavit is dated June 6, 2008, and was issued in response to the allegations in this lawsuit. It is not a document that Mr. Holman "utilized to render a verdict in favor of the Plaintiff" back in April 2006. Thus, the failure to produce Mr. Holman's affidavit – which was not in existence at the time the document production requests were answered in November 2007 – does not reflect misconduct by the Defendant or his counsel.

Accordingly, the various motions filed by the Plaintiff are denied.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment **(# 84)** is **GRANTED**. Judgment shall issue in favor of the Defendant on all claims. The Plaintiff's Motion to Strike **(# 85)**, "Motion for Ethics Violations" **(# 86)**, "Motion for the Issue of Perjury" **(# 87)**, and Motion to Dismiss **(# 91)** are **DENIED**.

Dated this 29th day of August, 2008

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge